IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br> Plaintiff, </br> vs. </br> ISLAMIC AMERICAN RELIEF AGENCY, et al., </br> Defendants. | Case No. 07-00087-CR-W-NKL |

**O R D E R**

Pending before the Court is a Motion for Severance filed by Defendants Murabek Hamed, Ali Bagegni, Ahmad Mustafa, Abdel El-Siddig, and Mark Siljander [Doc. # 199]. In their motion, Movants seek severance of Counts 1-32 and 42 from Counts 33-41 of the Second Superceding Indictment ("Indictment"), arguing that the multiple references to global terrorists and terrorism in Counts 33-41 are so inflammatory and prejudicial that a jury would not be able to compartmentalize them. The Government responds, arguing that severance is not warranted because the counts are interrelated and two trials would be inefficient for both the Court and the Government. For the reasons stated below, the Court grants Movants' Motion to Sever.

**I.   Background**

Pursuant to the Indictment, the following is a summary of the counts alleged in this case:

1

**Count 1** charges Defendants Islamic American Relief Agency ("IARA"), Hamed, Khalid Al-Sudanee, Bagegni, and Mustafa with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and the Iraqi Sanctions Regulations between March 1991 and May 2005.

**Counts 2 through 12** charge Defendants IARA, Hamed, Bagegni, and Al-Sudanee with substantive violations of IEEPA and the Iraq Sanctions Regulations, related to the transfer of funds raised in the United States through charitable donations to Iraq between December 1999 and August 2002.

**Count 13** charges Defendants IARA, Hamed, Bagegni, Mustafa, and Al-Sudanee with conspiracy to commit money laundering, related to transactions violating the Iraqi Sanctions Regulations between March 1991 and May 2003.

**Counts 14 through 24** charge Defendants IARA, Hamed, Bagegni, and Al-Sudanee with corresponding substantive money laundering offenses between December 1999 and August 2002.

**Counts 25 through 27** charge Defendants IARA, Hamed, and Bagegni with theft of public money, relating to United States Agency for International Development ("USAID") funds, which had been provided to Defendant IARA in 2004.

**Counts 28 through 31** charge Defendants IARA, Hamed, Bagegni, El-Siddig, and Siljander with conspiracy to commit money laundering and substantive money laundering transactions, relating to the use of stolen USAID funds for contracted efforts aimed at altering Defendant IARA's status before the United States Senate Finance Committee, between March 2004 and January 2008.

**Count 32** charges Defendant Siljander with obstruction of justice relating to statements made by Siljander to agents of the Federal Bureau of Investigation and Assistant United States Attorneys in 2005 and 2007.

**Count 33** charges Defendants IARA and Hamed with obstructing and impeding the administration of Internal Revenue laws, by using Defendant IARA's tax-exempt status to solicit funds, representing that they were legitimate charitable contributions, and misusing part of those funds by transferring funds to Iraq and to Pakistan for the benefit of Specially Designated Global Terrorist ("SDGT") Gulbuddin Hekmatyar between January 1997 and October 2004.

> **Counts 34-41** charge Defendants IARA and Hamed with prohibited transaction with a SDGT, Hekmatyar, in violation of IEEPA and Terrorism Sanction Regulations, related to the transfer of funds to Pakistan between February 2003 and August 2004.[1]
>
> **Count 42** charges Defendants IARA, Hamed, Bagegni, Mustafa, Al-Sudanee, El-Siddig, and Siljander with forfeiture.

In sum, Counts 1-24 represent the "Iraq counts," Counts 25-32 represent the "Siljander counts,"[2] and Counts 33-41 represent the "Pakistan counts." Finally, Count 42 is a catch-all forfeiture count against all defendants. The Iraq counts involve Defendants IARA, Hamed, Al-Sudanee, Bagegni, and Mustafa. Whereas, the Pakistan counts involve only IARA and Hamed. Further, the Iraq counts contain only one specific allegation related to terrorist activities:

> On or about November 6, 2001, the defendant IARA, through a person acting on its behalf, engaged in a television interview via satellite transmission from Columbia, Missouri, to Atlanta, Georgia, wherein the defendant IARA falsely and publicly claimed that Ziyad Khaleel, a then publicly identified associate and procurement agent of Osama Bin Laden, had never been an employee of the defendant IARA, when in fact, as the defendants IARA and [Hamed] then and there well knew and believed, he had been.

Indictment, ¶ 77(M).

Unlike the Iraq counts or the Siljander counts, the Pakistan counts incorporate by reference various paragraphs alleging that IARA and Hamed engaged in financial

---

[1] The Government asserts, however, that even though the specific counts are between February 2003 and August 2004, Counts 34-41 cover conduct beginning in May 2002.

[2] Although the Government labels these counts the "Siljander counts," the Court recognizes that Siljander is not charged in Counts 25 through 27. However, Counts 25 through 32 all relate to the allegation that USAID funds were used to alter IARA's status before the United States Senate Finance Committee.

transactions for the benefit of Gulbuddin Hekmatyar, an SDGT. Indictment, ¶ 74 (incorporating ¶¶ 36-41, among others). For example, the Government alleges in paragraph 39 that "Hekmatyar supported various terrorist acts conducted by al-Qa'ida, the Taliban and others, in Pakistan and elsewhere." *Id.* ¶ 39. The Government also alleges that "Hekmatyar vowed to engage in a holy war against the United States and international troops in Afghanistan" and that Hekmatyar issued a message, stating that his organization "will fight our jihad until foreign troops are gone from Afghanistan and Afghans have set up an Islamic government." *Id.* Finally, the Government alleges that Hekmatyar was designated as an SDGT because the "U.S. Government has information indicating that Gulbuddin Hekmatyar has participated in and supported terrorist acts committed by al-Qa'ida and the Taliban." Because of the prejudicial nature of the Pakistan counts, Movants seek severance of these counts from the Iraq counts and the Siljander counts.

**II.     Discussion**

    **A.     Standard for Granting Motion to Sever**

Movants argue that Counts 1-32 and 42 should be severed from Counts 33-41 under Federal Rule of Criminal Procedure 14(a). A court may grant a defendant's motion to sever where "joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Whether to grant a motion to sever under Rule 14(a) is within the sound discretion of the court. *United States v. Hively*, 437 F.3d 752, 764 (8th Cir. 2006).

A "district court should grant a severance under Rule 14 only if there is a serious risk

that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Where two or more defendants have been charged in the same indictment, there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice." *Hively*, 437 F.3d at 765 (citing *Zafiro*, 506 U.S. at 537).

Movants bear the burden to demonstrate prejudice. For example, prejudice is shown where the "the jury will be unable to compartmentalize the evidence as it relates to separate defendants because of a 'prejudicial spillover effect.'" *Id.* (citing *United States v. Mickelson*, 378 F.3d 810, 817 (8th Cir. 2004); *United States v. Lueth*, 807 F.2d 719, 731 (8th Cir. 1986)). Severance is improper simply because "evidence against one defendant is more damaging than that against another." *Id.* (citing *United States v. Pecina*, 956 F.2d 186, 188 (8th Cir. 1992)).

Movants and the Government recognize that Movants' burden for severance in a conspiracy case is high. *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009). The Government argues that courts rarely grant motions to sever, particularly in conspiracy cases. The Eighth Circuit has explained that it is the "rare case, if ever" in which a district court should sever a trial of co-conspirators. *See, e.g.*, *United States v. Frazier*, 280 F.3d 835, 844 (8th Cir. 2002). However, there is at least one case in which the Eighth Circuit found it was abuse of discretion not to sever the trial of two co-conspirators charged with mail fraud. *See United States v. Engleman*, 648 F.2d 473, 480-81 ("The general rule is that persons charged in a conspiracy are tried together. However, where a defendant demonstrates that a joint trial

5

will prejudice his right to a fair trial, the court must sever the trials.").

In *Engleman*, Defendants Engleman and Handy were charged with conspiracy to commit mail fraud in connection with an alleged scheme to defraud insurance companies by insuring the life of an individual and then later killing him in September 1976 in order to obtain insurance proceeds. *Id.* at 476. At defendants' joint trial, evidence that Engleman had engaged in a similar scheme in 1963, obtaining insurance proceeds from the murder of a business associate, was admitted. *Id.* Defendant Handy was not involved in the 1963 scheme. *Id.* at 476-77. The Eighth Circuit found the evidence of the 1963 murder so prejudicial against Defendant Handy that it ordered a new trial. *Id.* at 481.

### B. Severance Is Appropriate

Movants argue severance is appropriate due to the complexity of the case as well as the prejudicial nature of the allegations contained in the Pakistan counts, which a jury will not be able to compartmentalize as against defendants only charged with the Iraq counts. In response, the Government argues against severance because 1) all counts of the indictment are "inextricably intertwined"; 2) severance will not promote judicial economy; 3) there is no undue prejudice to Movants warranting severance; and 4) evidence that is stronger against one defendant is not grounds to sever.

Neither Movants nor the Government disagree that this is a complex case. The counts against Movants involve unique legal issues related to IEEPA, the Iraqi Sanctions Regulations, Internal Revenue laws, and Terrorism Sanctions Regulations. Given these issues, jury instructions are likely to be lengthy and complex. Furthermore, as Movants

6

explain, discovery in this case has been extensive involving tens of thousands of telephone recordings, of which the Government has indicated it may use as many as 500 telephone calls at trial. The parties estimate a trial against all defendants could last as long as seven weeks. The case is also more complex given that the allegations with regard to all counts span a time period of almost seventeen years, although the parties disagree on the amount of overlap of time between the Iraq and Pakistan counts.

The Pakistan counts clearly involve more allegations of direct involvement with terrorism, including evidence related to terrorists and terrorists groups such as Gulbuddin Hekmatyar, an SDGT, Osama Bin Laden, al-Qa'ida, and the Taliban. Given the complexity of the evidence produced during discovery, and the inflammatory nature of the Pakistan counts, there is a clear likelihood that the jury will not be able to compartmentalize evidence attributable to the defendants charged with the Pakistan counts from evidence attributable to the defendants charged with the Iraq counts. This will substantially affect the latter defendants' right to a fair trial.

The fact that there is one reference to a terrorist allegation contained in the Iraq counts, namely the reference to Ziyad Khaleel, who is alleged to be a former IARA employee and an associate and procurement agent for Osama Bin Laden, makes it even more likely that the jury will connect all the defendants to the Pakistan evidence even though they have not been charged with the Pakistan counts.[3]  *See United States v. Elzahabi*, No. 04-282, 2007

---

[3] In fact, the Government's argument that the counts are "inextricably intertwined" provides support to Movants' argument. If the jurors cannot compartmentalize and extract the

7

U.S. Dist. LEXIS 52024, at *9 (D. Minn. July 16, 2007) ("The slightest insinuation of terrorism would contaminate the perception of the defendant, and may infer the defendant's guilt on the immigration fraud charges."). The Court finds that this spill-over effect is not one which is readily resolved by careful jury instructions especially because the case will take seven weeks to try. In addition, the fact that multiple conspiracies are charged in the same indictment, increases the likelihood of confusion because of the difficulty of explaining to lay people what a conspiracy is, how co-conspirator statements can be used and how defendants can be held responsible for things they were not directly involved in once they join a conspiracy.

While it is true that severance is not justified because there is stronger evidence against one defendant than another, *see, e.g.*, *Frazier*, 280 F.2d at 844, the Movants have not suggested that severance should be granted for that reason. The issue is not the strength of the evidence against the defendants charged in the Pakistan counts. It is the inflammatory nature of the allegations in those counts and the spill-over effect on defendants not charged in those counts. *Hively*, 437 F.3d at 765 ("Severance is never warranted simply because the evidence against one defendant is more damaging than that against another . . . . What is required for severance is a specific showing that a jury could not reasonably be expected to compartmentalize the information." (citations omitted)).

---

Iraq counts from the Pakistan counts because they are so intertwined, then there is a clear likelihood that defendants to the Iraq counts could be found guilty due to the inflammatory and prejudicial terrorism allegations contained in the Pakistan counts.

8

The Government also argues that, for purposes of judicial economy and efficiency, it is more appropriate to try all counts in the Indictment together because the counts are interrelated and evidence, which would give the jury a full understanding of the offenses, overlaps in many respects. While it may be inefficient for both the Court and the Government to conduct separate trials, given the amount of time and money spent on the case to date, a second trial is not a substantial additional burden and would prevent almost certain prejudice to the defendants who are not named in the Pakistan counts.

The Government also asserts that the arguments of defendants who are not charged with the Pakistan counts are without merit because such defendants chose to associate themselves with IARA. However, these defendants have not been charged with the Pakistan counts and should not be found guilty because of their association with an organization that is charged. Guilt by association is precisely the concern Movants seek to prevent through severance. Because of the jury's inability to compartmentalize the Pakistan counts from the Iraq counts and because of the inflammatory and prejudicial nature of the terrorism references in the Pakistan counts that will unduly prejudice Movants not charged with these counts, the Court will order severance.

### III. Conclusion

Accordingly, it is hereby ORDERED that Movants' Motion for Severance [Doc. # 199] is GRANTED and Counts 1-32 and 42 are severed from Counts 33-41 of the Second Superceding Indictment. Further, Defendant Ahmad Mustafa's Motion for Severance [Doc. # 270] from all other defendants is DENIED.

9

 s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 21, 2009
Jefferson City, Missouri