IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-00087-CR-W-NKL |
| ) | |
| ISLAMIC AMERICAN RELIEF ) | |
| AGENCY, et al., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Pending before the Court is a Motion to Dismiss Counts 1 through 12 of the Second Superceding Indictment ("Indictment") filed by Defendants Murabek Hamed, Ali Bagegni, and Ahmad Mustafa ("Defendants") [Doc. # 194]. In their motion, Defendants allege Counts 1 through 12 of the Second Superseding Indictment should be dismissed because they charge conduct that does not violate the law. For the reasons stated below, the Court denies Defendants' Motion to Dismiss.

**I.     Background**

In Count 1 of the Second Superseding Indictment, the Defendants are charged with conspiring to transfer funds to Iraq in violation of the International Economic Emergency Powers Act ("IEEPA"), Executive Orders 12,722 and 12,724, and the Iraqi Sanctions Regulations. In Counts 2 through 12, Defendants are charged with specific instances of the unlawful transfer of funds to Iraq. The Government has also alleged that some "materials"

1

or "other items" were transferred into Iraq. The Government contends that, to the extent a count relates to the transfer of materials, Defendants failed to obtain the license required by the Iraqi Sanctions Regulations before humanitarian aid is sent to Iraq. *See* 31 C.F.R. § 575.205.

IEEPA permits the President to declare a national emergency, pursuant to an "unusual and extraordinary threat . . . to the national security . . . ." 50 U.S.C. § 1701(a). The President may then impose economic sanctions on a foreign country. The President, however, may not prohibit, directly or indirectly, the sending of "articles such as food, clothing and medicine, intended to be used to relieve human suffering" unless a finding is made that sending such aid "(A) would seriously impair his ability to deal with any national emergency . . . , (B) are in response to coercion against the proposed recipient or donor, or (C) would endanger Armed Forces of the United States . . . ." 50 U.S.C. § 1702(b)(2).

In Executive Orders 12,722 and 12,724, the United States President invoked his authority under IEEPA to declare a national emergency with regard to Iraq after Saddam Hussein invaded Kuwait. He did not, in those executive orders, make the findings necessary to prohibit humanitarian aid being sent to Iraq. However, Congress subsequently passed the Iraq Sanctions Act and regulations were promulgated in part to implement that Act. One such regulation banned the export of goods, services, and technology to Iraq, but permitted donated food and supplies for humanitarian purposes if an export license was first obtained. *See* 31 C.F.R. § 575.205. Thus, while certain humanitarian supplies could still be sent to Iraq they had to first be licensed by the U.S. government.

## II. Discussion

### A. Motion to Dismiss Standard

A defendant may move to dismiss an indictment based on failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). The constitutionality of a statute as well as its correct interpretation can be raised in a motion to dismiss. *United States v. Panarella*, 277 F.3d 678, 685 (3rd Cir. 2002). For purposes of a Rule 12(b) motion, the court assumes the facts alleged in an indictment are true. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

### B. Charges Related to Monetary Funds Being Sent Indirectly to Iraq

The Defendants are charged with sending monetary funds to Iraq through Amman, Jordan, in violation of the IEEPA, Executive Orders 12,722 and 12,724, and the Iraqi Sanctions Regulations. Defendants contend that they did not violate the IEEPA because the humanitarian exception to the IEEPA permitted them to send money for Iraq charities. They effectively argue that sending money into Iraq was not prohibited because monetary funds are "articles such as food, clothing and medicine intended to be used to relieve human suffering." Likewise, because Executive Orders 12,722 and 12,724 are based on the IEEPA, they were not violated when the Defendants sent money for humanitarian aid indirectly to Iraq. Alternatively, they argue that IEEPA is void for vagueness because it is not clear whether monetary funds are covered by the term "articles" in the IEEPA's humanitarian exception. They also contend that the provision in the Iraqi Sanctions Regulations which requires humanitarian aid to be licensed before it is sent to Iraq is *ultra vires* because the Iraqi Sanctions Regulations are purportedly authorized by the IEEPA and cannot therefore

3

conflict with the express humanitarian aid exception of the IEEPA.

The Court is not persuaded by Defendants' contention that the humanitarian aid exception in the IEEPA covers monetary funds. While it is true that IEEPA's humanitarian exception applies to more than just food, clothing and medicine, *see Veterans for Peace Convoy, Inc. v. Schultz*, 722 F. Supp. 1425, 1430 (S.D. Tex. 1988), those examples indicate that commodities, not money, were intended to be covered. Indeed, if the term "articles" is expansive enough to include money, Congress would not need to provide examples of what constituted an article. This is because money is merely a medium by which anything could be purchased. Therefore, by Defendants' interpretation, everything sent to Iraq for humanitarian purposes would be exempt. This reading is not consistent with the rule of statutory construction that assumes all words in a statute are intended to be necessary to express the intent of the drafters. *See United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007) (a court should avoid an interpretation that renders words in a statute either redundant or superfluous).

The legislative history of the IEEPA also supports the Court's interpretation. That history includes the testimony of then Assistant Secretary of the Treasury, Fred C. Bergsten, who explained that "the amended provision authorized donations of articles, but not monetary funds, thereby increasing the likelihood that the donation would be used for the intended purpose." Given the difficulty of proving that money was intended for and used for humanitarian aid once it reached Iraq, the Defendants' interpretation of the IEEPA would be inconsistent with the purpose of sanctions. Even the court, in *Veterans for Peace*, primarily

4

relied on by the Defendants, held that the humanitarian exception did not apply to monetary funds. *Id.* at 1431; *see also Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 68-69 (D.D.C. 2002) (the humanitarian aid exception to the IEEPA does not cover monetary funds).

Defendants argue that the rule of lenity should apply because the term "article" is ambiguous. Defendants also argue that the IEEPA is void for vagueness because the Defendants were not on notice that monetary funds were not covered by the IEEPA exception. As to the first argument, the Court has found that the language, legislative purpose and history of the IEEPA do not support Defendants' interpretation. There is simply no ambiguity. Likewise, a reasonable person would understand that monetary funds were not covered, given the examples in the statute and common sense. Moreover, the IEEPA made it clear that commerce with and to Iraq was restricted except for humanitarian purposes. If the IEEPA humanitarian exception is void for vagueness, the restrictions imposed by the IEEPA would control. Defendants cannot argue both that the humanitarian exception is void and the IEEPA restrictions are inapplicable. Moreover, it would make no sense to say that the entire text of the IEEPA was void because its exception was in part vague.

## C. Charges Related to Sending Articles into Iraq.[1]

---

[1] Although very few of the allegations in the Second Superseding Indictment relate to the transfer into Iraq of articles as opposed to money, the Government admits it is seeking to convict the Defendants for the behavior. Therefore, the Court must address the Defendants' argument that the Iraqi Sanctions Regulations are *ultra vires*.

5

In addition to sending funds, Defendants are charged with sending articles to Iraq without a license. As previously found, the IEEPA specifically exempts articles such as clothing, food and medicine if they are sent to Iraq for humanitarian purposes. The Iraqi Sanctions Regulations, however, provide that such humanitarian articles must be licensed by the United States Government before being sent to Iraq. Defendants argue that the Iraqi Sanctions Regulations are *ultra vires* because at no time did the President make the findings necessary to revoke IEEPA's humanitarian exception. Therefore, according to the Defendants, any license requirement in the Iraqi Sanctions Regulations would be *ultra virus* because it conflicts with the IEEPA, the very law which authorized the implementation of the Iraqi Sanctions Regulations.

Defendants' narrow focus on IEEPA, however, is not persuasive because "IEEPA is not the lone source of the President's power to enact economic sanctions." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 775. Rather, the Iraqi Sanctions Regulations were promulgated pursuant to multiple sources of authority, including the IEEPA, the United Nations Participation Act ("UNPA"), Executive Orders 12,722 and 12,724, and the Iraq Sanctions Act of 1990.

Congress enacted the UNPA in 1945, and amended it in 1949, providing that the President may "[n]otwithstanding the provisions of any other law" regulate or prohibit, in whole or in part, economic relations with another country in order to comply with United Nations' directives. 22 U.S.C. § 287c(a). On August 6, 1990, after the invasion of Kuwait, the United Nations Security Counsel adopted Resolution 661 "which called on all Member

6

States to prevent their nationals from engaging in economic and financial transactions with Iraq except for humanitarian donations of food and medical supplies." *Sacks*, 466 F.3d at 767-68 (citing S.C. Res. 661, ¶ 3, U.N. Doc. S/RES/661 (Aug. 6, 1990)). A month after Resolution 661 was adopted, "the United Nations Security Council became concerned that the Iraqi government was diverting donated humanitarian food and medical supplies to its military." *Id.* (citing U.N. SCOR, 4th Sess., 2939th mtg. at 12-13, 19, 25, U.N. Doc. S/PV.2939 (Sept. 13, 1990)). As a result, a new resolution was adopted, Resolution 666, recommending, among other things, "that medical supplies should be exported under the strict supervision of the Government of the exporting State or by appropriate humanitarian agencies." *Id.* (quoting S.C. Res. 666, ¶ 8, U.N. Doc. S/RES/666 (Sept. 13, 1990)).

In November 1990, Congress passed the Iraq Sanctions Act, declaring support "for the imposition and enforcement of multilateral sanctions against Iraq." Pub. L. 101-513 § 586A, 104 Stat. 1979, 2047-48 (1990). Congress further called for full support of the efforts of the United Nations Security Council. *Id.* With regard to humanitarian assistance, Congress provided:

> To the extent that transactions involving foodstuffs or payments for foodstuffs are exempted "in humanitarian circumstances" from the prohibitions established by the United States pursuant to United Nations Security Council Resolution 661 (1990), those exemptions shall be limited to foodstuffs that are to be provided consistent with United Nations Security Council Resolution 666 (1990) and other relevant Security Council resolutions.

*Id.* § 586C(b).

Movant's argument that they were not required to obtain a license in order to send

7

humanitarian articles to Iraq fails. While it is true that the President never made any finding necessary to revoke the IEEPA's humanitarian aid exception, the subsequent United Nations' resolutions and the Iraq Sanctions Act requiring support for those resolutions provide ample support for the Iraqi Sanctions Regulations. Moreover, 3 U.S.C. § 301 authorizes the President to "designate and empower the head of any department or agency in the executive branch . . . to perform without approval, ratification, or other action by the President . . . any function which is vested in the President by law." In the Iraq Sanctions Act, Congress instructed the President to continue to impose economic sanctions and specifically provided that humanitarian assistance transactions should comply with the United Nations' resolutions. Pub. L. 101-513 § 586C(b), 104 Stat. 1979, 2047-48 (1990). The Iraqi Sanctions Regulations lawfully imposed a requirement that a license must be obtained before sending humanitarian articles to Iraq. *See Voices in the Wilderness*, 329 F. Supp. 2d at 76-78 (finding that the UNPA authorized Iraqi Sanctions Regulations which required licensing of humanitarian aid; any reference to the IEEPA is surplusage).

This Court is persuaded by the analysis of the court in *Voices in the Wilderness.* With the broad authority given to the President in the UNPA, coupled with the United Nations' resolutions requiring participation in Iraq sanctions and the Iraq Sanctions Act, the Iraqi Sanctions Regulations licensure requirement for the transfer of humanitarian articles to Iraq was properly authorized. *See Voices in the Wilderness*, 329 F. Supp. 2d at 78; *see also Sacks*, 466 F.3d at 776. For these reasons, the Court denies Defendants' Motion to Dismiss Counts 1 through 12 for failure to state a violation of law.

## III. Conclusion

Accordingly, it is hereby ORDERED that Movants' Motion to Dismiss [Doc. # 194] is DENIED.

                                              Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

Dated: November 13, 2009
Jefferson City, Missouri