IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-00087-CR-W-NKL |
| ) | |
| ISLAMIC AMERICAN RELIEF ) | |
| AGENCY, et al., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Pending before the Court is a Motion to Dismiss Counts 1 through 12 of the Second Superceding Indictment ("Indictment") on First Amendment Grounds filed by Defendants Murabek Hamed, Ali Bagegni, and Ahmad Mustafa ("Defendants") [Doc. # 205]. In their motion, Defendants allege Counts 1 through 12 should be dismissed because their prosecution violates Defendants' First Amendment rights to free exercise of religion and freedom of association, speech, and expression. For the reasons stated below, the Court denies Defendants' Motion to Dismiss.

**I.     Background**

Defendants are charged in various counts of a forty-two count Indictment. They now seek dismissal of Counts 1 through 12. In Count 1, Defendants are charged with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and the Iraqi Sanctions Regulations by transferring funds into Iraq. In Counts 2 through 12, Defendants

1

are charged with specific incidents of transferring money in violation of those laws. Although the gravamen of the charges against Defendants relates to transferring funds to Iraq, the Government has acknowledged that Defendants are also charged with sending in-kind materials to Iraq for humanitarian aid purposes without a license.

The Iraqi Sanctions Regulations specifically prohibit any transfer of funds, directly or indirectly, to the government of Iraq or any person in Iraq (31 C.F.R. § 575.210) and prohibit exporting goods to Iraq for humanitarian purposes without a license (31 C.F.R. § 575.205). Defendants contend the Indictment must be dismissed because the Government's prosecution of them under these laws violates their First Amendment rights.

## II. Discussion

### A. Free Exercise of Religion

Defendants argue that their prosecution violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, which provides that the government may substantially burden a person's exercise of religion only if it is in the furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000bb-1(b) 1 & 2. The purpose of the Religious Freedom Restoration Act is to restore the "compelling interest test" of *Sherbert v. Verner*, 374 U.S. 398 (1963), when determining the constitutionality of governmental regulation that burdens free exercise of religion.

#### 1. Substantial Burden

The initial inquiry under the Court's analysis is whether the Government's prosecution of Defendants pursuant to the IEEPA and the Iraqi Sanctions Regulations substantially
2

burdens their sincerely held religious beliefs. *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir.1997). A "substantial burden" is government action which: (1) significantly inhibits or constrains conduct or expression that manifests some central tenet of a person's individual religious beliefs; (2) meaningfully curtails the ability to adhere to an individual's faith; or (3) denies reasonable opportunities to engage in those activities that are fundamental to an individual's religion. *See Weir v. Nix*, 114 F.3d 817, 820 (8th Cir.1997).

Defendants argue that they, along with IARA's donors, "shared the common purpose of fulfilling the obligations of all Muslim's of *zakat*," which is the duty to give alms to the destitute. [Doc. # 206, pp. 2-3].

Movants argue that the IEEPA and the Iraqi Sanctions Regulations substantially burden their religious belief in giving alms to the poor. *See Western Presbyterian Church v. Bd. of Zoning Adjustment*, 862 F. Supp. 538, 544 (D.D.C. 1994) ("It must be noted that the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions."). The Government responds that Defendants' ability to practice their religion is not substantially burdened because such burden must be more than an inconvenience and because an alternative means of exercising Defendants' belief exists. In other words, the Government argues that there is no substantial burden to Defendants' exercise of religion because their religion does not require them to give money to the poor in Iraq in order to comply with their religious beliefs.

In its argument, the Government cites to *Henderson v. Kennedy*, 253 F.3d 12 (D.C. Cir. 2001) and *Boardely v. United States Dep't of Interior*, 605 F. Supp. 2d 8 (D.D.C. 2009),

3

for its argument that there is no substantial burden where a regulation or statute only prohibits one possible method of engaging in a particular religion. In *Henderson*, the court determined that a regulation of the National Park Service banning the sale of t-shirts on the National Mall did not substantially burden plaintiffs' right to exercise their religion where evangelical Christians sought to sell t-shirts bearing religious messages. 253 F.3d at 17. The court explained that the ban was a restriction on "one of a multitude of means" because plaintiffs could still distribute t-shirts for free or "sell them on streets surrounding the mall." *Id.* Defendants respond that the court in *Henderson* also determined that it was "not aware of any religious group that has as one of its tenets selling t-shirts on the National Mall, even if the t-shirts bear a religious message." *Id.* at 16.

In *Boardley*, the court determined that a regulation relating to the issuance of permits to distribute pamphlets at national parks did not substantially burden an evangelical Christian's right to exercise his religion where the plaintiff sought to distribute religious pamphlets at Mt. Rushmore. 605 F. Supp. 2d at 14. The court explained that the plaintiff did not allege that he must distribute his gospel pamphlets at national parks and that the restriction only restricted one of a multitude of means for the plaintiff to spread the Gospel. *Id.*

Defendants respond that, in both *Henderson* and *Boardley*, the plaintiffs could reach all of the people they intended to reach by using alternative means. However, Defendants argue that the IEEPA and the Iraqi Sanctions Regulations hinder their ability to help the poor in Iraq. In support of their argument, Defendants cite to *In re Young*, a case in which the

4

Eighth Circuit determined that allowing a bankruptcy trustee to recover debtors' contributions to their church based on sincerely held religious beliefs of tithing substantially burdened the debtors' free exercise of religion. 82 F.3d 1407 (8th Cir. 1996), *rev'd on other grounds*, 521 U.S. 114 (1997), *opinion reinstated*, 141 F.3d 854 (8th Cir. 1998). The court in *In re Young* explained:

> Permitting the government to recover these contributions would effectively prevent the debtors from tithing, at least for the year immediately preceding the filing of the bankruptcy petitions. We do not think it is relevant that the debtors can continue to tithe or that there are other ways in which the debtors can express their religious beliefs that are not affected by government action. It is sufficient that the governmental action in question meaningfully curtails, albeit retroactively, a religious practice of more than minimal significance in a way that is not merely incidental.

*Id.* at 1418-19.

For purposes of this motion, the Court will assume, without deciding, that IEEPA and the Iraqi Sanctions Regulations substantially burden the Defendants' sincerely held religious beliefs.

### 2. Compelling Governmental Interest

Even if IEEPA and the Iraqi Sanctions Regulations substantially burden the Defendants' religious beliefs, the Government has a compelling reason for the burden. It is irrefutable that there is a compelling governmental interest in maintaining national security and public safety. *See, e.g.*, *Haig v. Agee*, 453 U.S. 280, 307 ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation."). "Protection of the foreign policy of the United States is a governmental interest of great

5

importance, since foreign policy and national security considerations cannot neatly be compartmentalized." *Id.*

Defendants do not disagree that the IEEPA protects "certain important government interests." However, they argue that in this case, as applied to Defendants, there is no compelling government interest because the Indictment does not indicate the Defendants are charged with providing non-humanitarian aid to Iraq. Defendants contend that because the IEEPA and the Iraqi Sanctions Regulations expressly permit humanitarian aid to relieve human suffering the only issue in this case is "whether the government has a compelling interest in requiring donors to obtain a license to provide aid."

First, while IEEPA and the Iraqi Sanctions Regulations permit articles to be sent to Iraq for humanitarian purposes, they do not permit money to be sent under any circumstances. [Doc. # 335]. Therefore, the license requirement of the Iraqi Sanctions Regulations is not the only issue in the case.

Second, it is clear that the monetary fund restriction and the license requirement furthers the compelling governmental interest of national security. The Court has previously recounted the history and purpose of IEEPA, the relevant Executive Orders and the Iraqi Sanctions Regulations [Doc. # 335] and will not repeat the discussion here. However, that history amply demonstrates how those laws further the compelling governmental interest in national security and foreign policy.

### 3. Least Restrictive Means

Although the Court has found a compelling governmental interest, it must also find

6

that the Iraqi Sanctions Regulations and IEEPA are the least restrictive means of achieving this interest. Defendants contend that the least restrictive means "would permit donors to purchase the goods and services they need to ensure aid delivery at a forward location near the intended recipients, in Jordan or even inside Iraq, if necessary." Essentially, Defendants believe the least restrictive means would be to allow them to send funds directly into Iraq or send funds to Iraq via Jordan.

The Defendants seem to argue that one of the purposes of the Iraqi Sanctions Regulations and IEEPA is to get humanitarian aid to Iraq. That is not their purpose. Rather, they are intended to ensure that any humanitarian articles sent to Iraq are not used for non-humanitarian purposes. The executive branch of the government has concluded that the best way to achieve that goal is to prohibit all monetary transfers and to require a license before humanitarian articles are sent to Iraq. Defendants counter that there are less restrictive ways to achieve the government's goals. For example, the government could just require after the fact reporting of who received money in Iraq, or the government could require a donor to provide information in advance about intended transfers.

First, the Court does not understand how providing advance notice of humanitarian funds being shipped into Iraq would further the purposes of IEEPA and the Iraqi Sanctions Regulations. It would not prevent the flow of money through humanitarian organizations into the military either by force or overt cooperation. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 82 (D.D.C. 2002) ("Money is fungible, and the Government has no other, narrower, means of ensuring that even charitable contributions to a terrorist

7

organization are actually used for legitimate purposes."); *Farrakhan v. Reagan*, 669 F. Supp. 506, 512 (D.D.C. 1987) (explaining that, with regard to Lybia Sanctions Regulations prohibiting sending funds to Lybia, "[t]o find that the First Amendment free speech guarantees mandated that [the plaintiff-mosque] be allowed to send money to Libya would be to open the door for any group or individual to send money anywhere as an act of symbolic speech. In the face of the national security interests lying behind the sanction regulations, we conclude that there is no alternative that would allow organizations to speak through contributions while still allowing the government to effectuate its legitimate and compelling interests in national security."). Hence, a total embargo on monetary funds is the least restrictive means to further the national security goals of IEEPA.

As for humanitarian articles, the Court does not understand how the licensing procedures of the Iraqi Sanctions Regulations is substantially different from the prior notice proposal advanced by the Defendants. There is no evidence before the Court that anyone making true humanitarian shipments in compliance with federal law has been denied a license. As for an after the fact reporting requirement, it would not permit the government to adequately monitor shipments and to prevent questionable shipments from being sent into Iraq. By the time a report is made, the harm could already have been done.

In a situation like this, where the debate about the least restrictive means is at best nuanced, it is clearly appropriate for a court to defer to the expertise of the executive concerning what is an effective way to achieve the least restrictive means to further the compelling governmental interest of national security. *See Office of Foreign Asset Control*

8

*v. Voices in the Wilderness*, 329 F. Supp. 2d 71, 81 (D.D.C. 2004).

The Court finds that the government's licensing requirements and embargo on all monetary funds are the least restrictive means of accomplishing the government's compelling interest. As a result, Defendants' motion to dismiss on free exercise of religion grounds is denied.

### C. First Amendment Freedom of Association, Speech, and Expression

Defendants argue that their prosecution under the IEEPA and the Iraqi Sanctions Regulations violates their freedoms of association, speech, and expression. For the reasons stated below, the Court finds that Defendants' prosecution does not violate their identified bundle of First Amendment rights.

With regard to the freedom of association, Defendants make no argument regarding why their prosecution violates their right to association. It is well-settled that "[t]he First Amendment . . . restricts the ability of the [government] to impose liability on an individual solely because of his association with another." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982). The Court finds that the IEEPA, the Executive Orders, and the Iraqi Sanctions Regulations do not prohibit membership in any organization or the endorsement of its views, and therefore does not implicate Defendants' association rights. In other words, Defendants' argument fails because the Iraqi Sanctions Regulations does not prohibit mere association, but rather, it prohibits the conduct of sending funds to Iraq and sending in-kind materials to Iraq without a license. *See United States v. Hammoud*, 381 F.3d 316, 328-29 (4th Cir. 2004); *Islamic Am. Relief Org. v. Unidentified FBI Agents*, 394 F.

9

Supp. 2d 34, 53 (D.D.C. 2005).

With regard to freedom of speech and expression, Defendants argue that their prosecution implicates such freedoms because they are being prosecuted for engaging in "protected expressive conduct" by assisting the poor and hungry in Iraq and intending "to publicize the plight of the Iraqi people by building orphanages in Iraq, bringing in food and humanitarian supplies and then publicizing their efforts through newsletters and websites."

At least one court to consider First Amendment violations in the context of the Iraqi Sanctions Regulations concluded that any First Amendment claim was "tenuous" but that the "regulatory scheme may be viewed as having the incidental effect of burdening speech." The Court, therefore, applied the intermediate scrutiny test outlined in *United States v. O'Brien*, 391 U.S. 367, 376 (1968); *see also Clancy v. Office of Foreign Asset Control*, No. 05-580, 2007 WL1051767, at *14-15 (E.D. Wisc. Mar. 31, 2007).

Pursuant to the four-part test in *O'Brien*, the Iraqi Sanctions Regulations passes the intermediate scrutiny test if (1) "it is within the constitutional power of the Government" (2) "it furthers an important or substantial governmental interest;" (3) "the governmental interest is unrelated to the suppression of free expression;" and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377.

Under the first prong, the Iraqi Sanctions Regulations fall within the constitutional power of the government, and this Court has already found that the Iraqi Sanctions Regulations were properly promulgated [Doc. # 335]. Under the second prong, the Court has

10

already found that there is not only an "important or substantial governmental interest" at stake but also there is a compelling governmental interest in foreign policy and national security. Under the third prong, the government's interest in foreign policy and national security in implementing sanctions against Iraq is not related to suppressing Defendants' free expression. Finally, under the fourth prong, the Court has already determined that the restriction on Defendants' alleged First Amendment rights is the least restrictive means to further the government's compelling interest.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss [Doc. # 205] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 18, 2009
Jefferson City, Missouri

11